1    UNITED STATES DISTRICT COURT
2    DISTRICT OF PUERTO RICO

3    UNITED STATES OF AMERICA,
4
5        Plaintiff,
                                              Crim. No. 96-337 (JAF)
6                                             (Reassigned from HL)
7        v.

8    JOSE LUIS CINTRÓN-MORENO,
9
10       Defendant.

11                          **OPINION AND ORDER**

12       In our Order of October 14, 2009, we ordered Defendant to show cause as to why he has

13   standing to challenge the forfeiture of certain property that government records detail as seized

14   from other persons.   (Docket No. 1990.)   We have reviewed Defendant's motion and

15   accompanying exhibits (Docket No. 1994), and we now enter the following disposition.

16                                        I.

17                     **Factual and Procedural Synopsis**

18       In a prior order from which Defendant appealed, we determined that all of Defendant's

19   personal property had been accounted and was either returned to Defendant and his agents or

20   properly delivered to the U.S. Marshals Service for forfeiture. (Docket No. 1951 at 3-4.)  The

21   Court of Appeals affirmed our determination that none of the property seized from Defendant

22   remained unaccounted.  United States v. Cintrón-Moreno, No. 08-1087, slip op. at 2-3 (1st Cir.

1    Aug. 10, 2009) ("Cintron-Moreno did not meet his burden to demonstrate that the government

2    continued to retain his property and the district court therefore did not clearly err in so

3    holding.").  On remand we were to reconsider whether evidence that had been transferred to the

4    U.S. Marshals Service was improperly disposed of or lost.  Id.  The DEA previously submitted

5    a record, DEA Form 48a (Docket No. 1952), of all property transferred to the U.S. Marshals

6    Service for forfeiture proceedings following the investigation of the criminal conspiracy for

7    which Defendant was convicted ("Form 48a items").

8         That form, dated May 8, 1997, catalogs six exhibits, all of which were transferred to the

9    U.S. Marshals Service for forfeiture proceedings.  (Id.)  The "File Title" field of Form 48a lists

10   the name "Maria Rosa-Torres."  (Id.)  Ms. Torres is the Defendant's wife and a convicted co-

11   conspirator in the crime that triggered the forfeiture.  Apart from Ms. Torres' name under the

12   "File Title," this form did not attribute the ownership of the listed items to anyone. (Id.) DEA

13   Taskforce Agent Ángel Sánchez testified during the evidentiary hearing that property seized

14   from all co-conspirators who were subjects of the overarching DEA investigation would appear

15   on Form 48a. (Docket No. 1962 at 24 ("Q:  Now, if there was any cash that was seized from the

16   defendant or any of the defendants in the case, in 96-337, would that money have been reflected

17   on [Form 48a]?  A:  Yes.")).

18        In response to our order, the government submitted recently-discovered DEA documents

19   cataloging the disposition of each of the Form 48a items.  (Docket No. 1988-4.)  Each "Status

20   Inquiry Document" describes the asset seized, its value, the date of its seizure, its disposition,

1    and, most importantly for our purposes, from whom it was seized.  Id.  According to these

2    documents, none of the Form 48a items listed for forfeiture to the U.S. Marshals Service were

3    seized from Defendant. Rather, the government's submission suggests that these items were

4    seized from Defendant's various co-conspirators.[1]

5          None of the Form 48a items were listed on the DEA's "Report of Investigation," which,

6    according to Agent Sánchez, listed property seized during the search of Defendant's home.

7    (Docket Nos. 1952; 1962.)  As of the date of the government's submission of the Status Inquiry

8    Documents, Defendant had not presented any evidence of his ownership of the Form 48a items.

9    Despite the serious doubt cast on Defendant's standing to pursue a claim for return of the Form

10   48a items, the government did not expressly move for dismissal.  We raised the issue sua sponte

11   and ordered the Defendant to show cause, within fifteen days, as to why he had standing to

12   challenge the forfeiture of the Form 48a items.

13         Defendant argues that the Form 48a items included his and Ms. Torres' property.

14   (Docket No. 1994.)  He produces no evidence to contradict the DEA's records, however, except

15   unsworn declarations from him and his wife claiming the seizure, during the 1997 search of

16   their home, of over $25,000 in jewelry, $3,482 in cash, and a Canon Copier valued at $2,508.

17   (Docket Nos. 1994-2; 1994-3.)  The only specific reference to the Form 48a items in these

---

[1] Of the six exhibits, only exhibit N-154, consisting of two Banco Popular checks totaling $1,900, was seized from Defendant's wife. (Docket No. 1988-4 at 8.)  She received timely notice of the forfeiture, but apparently failed to respond with a petition within the statutorily-mandated twenty-day period. (Id.); see 19 U.S.C. § 1608.

Criminal No. 96-337 (JAF)                                                                                                           -4-

1    declarations is to disclaim $7,000 of jewelry that a DEA status inquiry document recorded as

2    seized from a co-defendant: "I am not claiming any property seized from me that was not mine

3    (i.e. property that was seized and forfeited on the person of Jorge Noel Rosado Vazquez, co-

4    defendant of our criminal case . . . ." (Docket No. 1994-4 at 2.)  No other evidence pertaining

5    to the Form 48a items was presented by Defendant.  Instead, Defendant claims various other

6    items, such as Rolex watches and winning lottery tickets, were seized from his home and either

7    improperly forfeited or stolen by government agents.  (Docket Nos. 1994-2; -3; -4.)

8                                                              **II.**

9                                    **Standard for Sua-Sponte Dismissal**

10    "[S]ubject matter jurisdiction is a bit like pregnancy; it either exists or it does not." Ne.

11    Fed. Credit Union v. Neves, 837 F.2d 531, 532 n.2 (1st Cir.1988) (citations omitted).  A federal

12    district court has an independent obligation to review its subject-matter jurisdiction over all

13    cases "even in the absence of a challenge from any party." Arbaugh v. Y & H Corp., 546 U.S.

14    500, 514 (2006); see Fed. R. Civ. P. 12(h)(3).  A dismissal for lack of subject-matter jurisdiction

15    is properly analyzed under Rule 12(b)(1), a "large umbrella, overspreading a variety of different

16    types of challenges to subject-matter jurisdiction," including mootness. Valentín v. Hosp. Bella

17    Vista, 254 F.3d 358, 362-63 (1st Cir. 2001).

18                  Under Federal Rule of Civil Procedure 12(b)(1), subject-matter jurisdiction may be

19    challenged by controverting the jurisdictional facts alleged by the nonmoving party. See Torres-

20    Negrón v. J & N Records, LLC, 504 F.3d 151, 162-63 (1st Cir. 2007).  If the challenges to

Criminal No. 96-337 (JAF)                                                          -5-

1    jurisdiction are entwined with the merits of the case, then the court should employ the summary

2    judgment standard to resolve the jurisdictional dispute.  Id. at 163.

3          Summary judgment is appropriate where "the pleadings, the discovery and disclosure

4    materials on file, and any affidavits show that there is no genuine issue as to any material fact."

5    Fed. R. Civ. P. 56(c).  Upon "a preliminary showing that no genuine issue of material fact exists,

6    the nonmovant must 'produce specific facts, in suitable evidentiary form, to establish the

7    presence of a trialworthy issue.'"  Clifford v. Barnhart, 449 F.3d 276, 280 (1st Cir. 2006)

8    (quoting Triangle Trading Co. v. Robroy Indus., Inc., 200 F.3d 1, 2 (1st Cir. 1999)).  The

9    nonmovant "may not rely merely on allegations or denials in its own pleading; rather, its

10   response must . . . set out specific facts showing a genuine issue for trial."  Fed. R. Civ.

11   P. 56(e)(2).

12         We may grant summary judgment sua sponte, provided that discovery has sufficiently

13   progressed for the court to determine relevant facts and the target has had at least ten days'

14   notice to contest the impending judgment.  Stella v. Town of Tewksbury, 4 F.3d 53, 55-56 (1st

15   Cir. 1993).

16                                              **III.**

17                                           **Analysis**

18         Mootness has been defined as "the doctrine of standing set in a time frame: The requisite

19   personal interest that must exist at the commencement of the litigation (standing) must continue

20   throughout its existence (mootness)."  U.S. Parole Comm'n v. Geraghty, 445 U.S. 388, 397

1    (1980) (quoting Henry Monaghan, <u>Constitutional Adjudication: The Who and When</u>, 82 Yale

2    L.J. 1363, 1384 (1973)).  The mootness doctrine flows from Article III of the Constitution,

3    which limits courts to deciding actual cases or controversies.  <u>See</u> U.S. Const. art. III, § 2.  A

4    case is moot "when the issues presented are no longer live or when the parties lack a legally

5    cognizable interest in the outcome."  <u>Overseas Military Sales Corp. v. Giralt-Amada</u>, 503 F.3d

6    12, 17 (1st Cir. 2007) (internal quotation marks and citation omitted).  Where a court determines

7    a case is moot, "dismissal of the action is compulsory."  <u>Id.</u>

8         In the present case, the government has controverted Defendant's jurisdictional facts by

9    presenting evidence that the Form 48a items were not seized from Defendant.  Because the fact

10   of Defendant's interest in this property is entwined with the merits of the case, we consider the

11   motion under the summary judgment standard.  Defendant has not presented any evidence to

12   contradict the government records showing that the Form 48a items were seized from co-

13   defendants.  Nor has he presented any credible evidence that he ever owned or had any other

14   interest in these items.  Rather, the majority of Defendant's response to our order to show cause

15   consists of claims for money and personal property that were supposedly seized yet not

16   documented by the DEA; these claims were disposed of by our previous rulings.  (<u>See</u> Docket

17   No. 1951 at 4 ("[T]he claim made by Defendant that the seized property included items like

18   Rolex watches and identifiable, specifically-numbered lottery tickets is simply not credible.").)

19   Therefore, Defendant has not established a legally-cognizable interest in the Form 48a items.

20   Finally, we note that Defendant was given fifteen days within which to present credible

Criminal No. 96-337 (JAF)                                                                        -7-

1      evidence of his continued standing, a period in excess of the minimum ten days required for sua-

2      sponte summary judgment.

3      <center>**IV.**</center>

4      <center>**<u>Conclusion</u>**</center>

5      For the reasons stated above, we hereby **DISMISS** with prejudice Defendant's claim for

6      return of property.

7      **IT IS SO ORDERED.**

8      San Juan, Puerto Rico, this 2nd day of December, 2009.

9                            s/José Antonio Fusté

10                             JOSE ANTONIO FUSTE

11                             Chief U.S. District Judge